SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| **SAMUEL DAN NUNBERG,**<br><br>         Plaintiff,<br><br>-against-<br><br>**GUO WENGUI, a.k.a. MILES KWOK,**<br><br>         Defendant. | Index No.: 150141-2020<br><br>**COMPLAINT**<br>**and**<br><u>**JURY DEMAND**</u> |

Plaintiff Samuel Dan Nunberg ("Plaintiff" or "Nunberg"), by and through his attorneys, Nesenoff & Miltenberg, LLP, as and for his Complaint against Defendant, Guo Wengui, also known as Miles Kwok ("Defendant" or Guo"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Samuel Dan Nunberg brings this action to put a halt to malicious campaign of lies by Defendant Guo Wengui, in which Guo has engaged for the sole purpose of exacting revenge upon his political and personal rivals in the interest of personal gain, without any regard for the truth.

2. Defendant Guo Wengui, also known as Miles Kwok,[1] is a Chinese multi-billionaire currently residing in a luxe, $68 million apartment in Manhattan overlooking Central Park, which he occasionally leaves for trips on his luxury yacht or to visit President Trump's private beach club, Mar-a-Lago. Guo, who styles himself as a political dissident and anti-corruption whistle-blower—but has, himself, been accused of corruption in China including bribery, fraud, and

---

[1] On information and belief, Guo utilizes a number of aliases for both business and legal affairs, including Kwok Ho Wan, Guo Haoyun, and Guo Wen Gui.

1

embezzlement, and has, additionally, been sued by Chinese dissidents for alleged tortious acts and defamation, and has also been sued for assault, battery, and false imprisonment for allegedly kidnapping and repeatedly, violently raping a younger employee—frequently utilizes social media, as well as litigation, to attack, harass, and disparage those whom he views as enemies and who would dare to question his carefully cultivated public persona.[2]

3. According to Guo himself, his "activities have garnered significant attention from around the world. He has been interviewed by many leading newspapers worldwide, including the New York Times, Wall Street Journal, and other international publications." On information and belief, Guo's now-suspended Twitter account, @Kwokmiles, at one point had over half a million followers. Guo's currently active, public YouTube account, "郭文贵", has over three hundred thousand subscribers. Guo's currently active, public Instagram account, "guowengui", has over forty thousand followers.

4. Utilizing his world-wide publicity, high profile, social media accounts, and seemingly endless financial means, Defendant Guo regularly uses his public platform and power to defame and harass his enemies.

5. In this case, Guo set his sights on destroying Plaintiff Samuel Nunberg's reputation and livelihood by filing baseless litigation against him and slandering Nunberg with malicious, false lies which discredit Nunberg both personally and professionally.

6. In reality, while Guo has disparaged Nunberg's personal and professional character with lies, upon information and belief, Guo is a massive debtor who faces legal judgments and a myriad of civil and criminal charges throughout the world. Upon information and belief, Guo and

---

[2] As of the filing of this Complaint, Guo is the Plaintiff in eight active litigations in New York State courts alone.

his businesses have been implicated in coordinating massive fraudulent and corrupt schemes including, bribery, extortion, and even spying on suspected Chinese dissidents. Guo, who hides behind the veneer of 'human rights' and 'political asylum,' is also an alleged serial rapist in the United States.

7. Plaintiff Nunberg seeks only to go about his daily and professional life without undue interference and harassment from Guo based upon Guo's petty, personal agendas.

8. For the foregoing reasons, to be explained in further detail herein, Plaintiff seeks injunctive and monetary relief for defamation and defamation per se.

## THE PARTIES

9. Plaintiff Samuel Dan Nunberg is a natural person, a citizen of the State of New York, and an active member of the New York State Bar.

10. Defendant Guo Wengui is a Chinese national currently residing in New York, New York. On information and belief, Defendant Guo maintained the now-suspended Twitter account "@KwokMiles," and maintains the currently active YouTube account "郭文贵". Guo frequently broadcasts videos to his YouTube account from his New York City luxury apartment. On information and belief, Guo filmed the video at issue in this case in his New York apartment.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant Guo Wengui because at all relevant times herein, he resided in the County of New York.

12. Venue is proper in this Court because Defendant resides in New York County, and the events underlying this action took place in New York County. N.Y. C.P.L.R. § 503.

FILED: NEW YORK COUNTY CLERK 02/19/2020 04:26 PM
Case 22-05017   Doc 1-1   Filed 07/19/22   Entered 07/20/22 10:12:06   Page 4 of 14
NYSCEF DOC. NO. 3

INDEX NO. 150141/2020

RECEIVED NYSCEF: 02/19/2020

## FACTS COMMON TO ALL CAUSES OF ACTION

### I. Guo Wengui Sues Bruno Wu and Roger Stone

13. In January 2018, Guo filed a lawsuit against Bruno Wu, also known as Zheng Wu/ Wu Zheng ("Wu"), alleging a conspiracy as broad as it was baseless. Guo claimed, without a shred of evidence, that Wu, a Chinese businessman, had conspired with unnamed government officials, resulting in the Chinese government's seizure of Guo's assets in China. Guo sought over a billion dollars in damages. *See Wengui v. Wu*, No. 18-cv-00845-RA (S.D.N.Y. Jan. 30, 2018) (hereinafter, "the SDNY Action").

14. Shortly after Wu filed a motion to dismiss the SDNY Action, Guo filed a voluntary dismissal.

15. On or about March 15, 2018, Guo filed a lawsuit in the United States District Court for the Southern District of Florida (the "Florida Action") against Roger Stone, alleging various forms of defamation based upon statements that Stone made in September 2017 through January 2018. *See Wengui v. Stone*, No. 18-cv-20983 (JEM) (S.D. Fl. Mar. 15, 2018).

16. Nunberg was not named, identified, or referenced in any way in either the SDNY Action or the Florida Action.

17. On or about December 17, 2018, Stone and Guo entered into a settlement agreement in resolution of the Florida Action. Pursuant to the settlement agreement, Stone issued a public apology to Guo, published in several major news publications, including The New York Times, The Wall Street Journal, and The Washington Post, blaming his allegedly defamatory statements on information produced by Wu, using Nunberg as an intermediary.

18. On information and belief, it was this statement that put Plaintiff Nunberg in Guo's crosshairs.

4

## II. Guo Harasses and Defames Nunberg

### a. Guo Files Baseless Litigation

19. Shortly after Stone issued his negotiated-upon public statement blaming his prior defamation on Wu and Nunberg, Guo filed a new lawsuit against Nunberg and Wu in New York State Court. *See Wengui v. Nunberg*, No. 162069/2018 (Sup. Ct., Dec. 21, 2018) (hereinafter, "the State Action.")

20. In this new lawsuit, Guo restated all of his prior claims against Wu from the dismissed SDNY Action, and tacked on defamation claims against both Wu and Nunberg based entirely on *Roger Stone*'s previous public statements, for which Guo had *already sued and settled*.

21. Incredibly, Guo now alleged, out of thin air, that Nunberg was part and parcel of the Chinese government conspiracy, along with Wu, that resulted in Guo's property being seized by the Chinese government in 2014 and 2015. Based on these preposterous fictions, Guo made a litany of claims against Nunberg, including violations of the Racketeering and Corrupt Organizations Act (RICO), and "conspiracy to defame," which is a non-existent claim under New York Law.

22. From the beginning, it was clear that Guo's claims were factually absurd, legally deficient, time-barred, and baseless. The suit was brought for the sole purpose of harassing Wu and punishing Nunberg as an associate of Wu.

### b. Guo Defames Nunberg

23. On January 10, 2019—just three weeks after filing the baseless action against Nunberg—Guo posted a lengthy (ninety-three minutes) public video to his YouTube page, at https://www.youtube.com/watch?v=-s2bCVFEu64&feature=youtu.be.

5

24. As of the date of this writing, the video is still publicly available, active, and has been viewed over 50,000 times and "liked" over one hundred times.

25. In the video, which contains numerous rambling and bizarre claims against a myriad of Guo's enemies, Guo made the following defamatory statements,[3] starting around the sixteen-minute mark and ending just before the eighteen-minute mark:

> Right now, what is the game Wu Zheng[4] is playing? We sued Sam, Sam Nunberg. Sam Nunberg is the guy who builds border walls for President Trump. He is President Trump's campaign advisor. Roger Stone apologized. He said that fake news came from Sam Nunberg and We Zheng. That is the guy. But Sam Nunberg immediately wants to sign a legal contract with Wu Zheng, because he is a licensed attorney. He said that he and Wu have attorney client relationship. If it is attorney client relationship, when the judge asks him, the judge cannot ask anything said between him and Wu, absolutely not. . . .
>
> Another thing is that Sam Nunberg helped Bruno Wu, made arrangement with Elliott Broidy, made arrangement with the Justice Department, helped Jho Low lobby, and helped smoothing the thing over. So on this issue, even their attorney-client relationship cannot be protected. *It is already a criminal matter*.

26. Here, Guo is referring to the highly publicized corruption scandal involving the Malaysian state investment fund 1MDB ("the Fund"). The scandal focused on Jho Low, a Malaysian financier accused of embezzling billions of dollars from the Fund. The matter was being investigated by the United States Department of Justice.

27. Back in March 2018, the Wall Street Journal had reported that Elliott Broidy, a well-known venture capitalist and republican fundraiser, had allegedly been in talks with Jho Low

---

[3] Guo's video is in Chinese. Annexed hereto as Exhibit A is a chart containing the statements in their original Chinese, alongside the English translations. Annexed hereto as Exhibit B is an affidavit of accuracy as to the translations.

[4] Wu Zheng is Bruno Wu.

6

to intervene on Low's behalf with the Justice Department, to stop the probe into Low and the Fund, in exchange for $75 million for Broidy and his wife. A Justice Department official was also named as a participant in the scandal.

28. On information and belief, despite many publications and news articles about the Broidy/1MDB scandal between the time the story broke and the date of Guo's video, not a single report mentioned any connection with Nunberg. The reason for that is clear: Nunberg had no involvement whatsoever with Jho Low, Elliott Broidy, or the Justice Department's investigation into the Fund.

29. Given the considerable, publicly available information regarding the scandal, and given the dearth of any connection to Nunberg, and given the reality that Nunberg had no involvement with Broidy or 1MDB (and, in fact, has never even met Elliott Briody), Guo's statements were patently false, Guo knew they were false, and he made them for the express purpose of defaming Nunberg.

30. On information and belief, Guo is no stranger to making up false claims about those whom he opposes, based upon the several defamation suits filed by other individuals against Guo.

31. By falsely accusing Nunberg of trying to wrongfully interfere with a Justice Department investigation—essentially, corruption and obstruction—Guo defamed Nunberg.

32. By falsely accusing Nunberg of lobbying a government agency on behalf of a foreign principal, Guo has accused Nunberg of committing a federal crime, which is slander per se. *See* 22 U.S.C. § 611 *et seq.* (unregistered agent of a foreign principal punishable up to $10,000 fine and five years in prison).

33. Moreover, Guo's direct statement that "it is already a criminal matter" is also slander per se.

7

FILED: NEW YORK COUNTY CLERK 02/19/2020 04:26 PM
NYSCEF DOC. NO. 3

Case 22-05017    Doc 1-1    Filed 07/19/22    Entered 07/20/22 10:12:06    Page 8 of 14
INDEX NO. 150141/2020
RECEIVED NYSCEF: 02/19/2020

34. Later in the same video, around the fifty-one minute mark, Guo stated:

> [O]ur country trusts conmen. Only conmen can survive. . . . . Why did Sam Nunberg go to a Jewish [club/synagogue] to spew big lies, saying he saved 60,000 Jews. This is totally ridiculous. If you ever have any common sense, how could he have saved 60,000 people? Jewish people would remember every person that gave them a loaf of bread. In this aspect, Jewish people did very well.

35. Nunberg is the descendent of Holocaust survivors; his family escaped from Auschwitz, one of the largest of the Nazi death camps, where over a million Jews were brutally murdered. Nunberg and his family are strong supporters of Israel.

36. Nunberg attended a highly selective Modern Orthodox Jewish day school for his high school education and still attends synagogue in New York City.

37. Guo's absurd and entirely fabricated claim that Nunberg lied about having saved the lives of 60,000 Jews is beyond insulting; it is accusing a member of the Jewish faith of essentially lying to and manipulating his fellow Jews with respect to one of the most serious and devastating atrocities in their cultural history.

38. Once again, Guo's statement was false, he knew it was false, and he made the statement for the sole purpose of harming Nunberg.

### c. Guo's Baseless Suit is Dismissed

39. In or around July 2019, Nunberg's attorneys reached out to Guo's attorneys to request they dismiss the baseless RICO/Defamation State Action against Nunberg. Nunberg's attorneys pointed out the myriad factual and legal deficiencies with Guo's claims.

40. In response, Guo offered to dismiss the RICO claims against Nunberg only if Nunberg would agree to implicate Wu in the defamation claim. Nunberg refused.

41. Eventually, under threats of frivolous litigation sanctions, Guo relented in part, and dismissed the RICO claims against Nunberg. However, he refused to dismiss the defamation

8

claims which, once again, were entirely based on publications by Roger Stone, over which Guo had already sued and settled.

42. After Guo refused to dismiss the defamation claims, Nunberg was forced to file a motion to dismiss the claims with prejudice (as they were so baseless that amendment would be futile).

43. On December 18, 2019, The Supreme Court of New York, Hon. Lynn R. Kotler, granted Nunberg's motion and dismissed the entirety of Guo's claims. The Court found that Guo "wholly failed to meet [the] pleading burden," as there were "no facts about when and where either Nunberg or Wu made these false statements about the plaintiff, nor are the particular words either defendant used asserted in the complaint. . . . Indeed, without any facts about when the statements occurred, the court cannot find that his cause of action was timely commenced."

## III. Damages

44. As a direct and proximate result of Guo's defamation of Plaintiff, including his allegations that Nunberg, a barred attorney, violated federal law and tried to use his position as an attorney to cover up "criminal acts", Plaintiff has suffered irreparable reputational harm and diminished business opportunities.

45. As a direct and proximate result of Guo's defamation of Plaintiff, including his allegation that Plaintiff made false claims about saving thousands of Jewish lives, Plaintiff has suffered irreparable reputational harm and diminished business opportunities.

9

FILED: NEW YORK COUNTY CLERK 02/19/2020 04:26 PM
NYSCEF DOC. NO. 3

Case 22-05017   Doc 1-1   Filed 07/19/22   Entered 07/20/22 10:12:06   Page 10 of 14
INDEX NO. 150141/2020
RECEIVED NYSCEF: 02/19/2020

## AS AND FOR A FIRST CAUSE OF ACTION
(Defamation – Slander Per Se)

46. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

47. Under New York law, a false allegation of serious criminality is considered defamatory per se. *See Knutt v Metro Intern., S.A.*, 91 AD3d 915, 916 [2d Dept 2012]. Similarly, statements that "tend to injure another in his or her trade, business or profession" are considered defamation per se. *Liberman v Gelstein*, 80 NY2d 429, 435 [1992].

48. On January 19, 2019, Guo posted a public video on YouTube.com, on his personal YouTube account, "郭文贵", stating: "Sam Nunberg helped Bruno Wu, made arrangement with Elliott Broidy, made arrangement with the Justice Department, helped Jho Low lobby, and helped smoothing the thing over. So on this issue, even their attorney-client relationship cannot be protected. *It is already a criminal matter.*"

49. These statements are false: Plaintiff Nunberg never made any arrangement with Elliott Broidy (in fact has never met Broidy), never helpd Jho Low Lobby, and never made any arrangement with the Justice Department concerning either Broidy or Low.

50. Defendant Guo knew that these statements were false; there were ample public news reports about the Broidy/Low scandal, none of which mentioned any involvement or connection with Nunberg.

51. Defendant Guo knew that the statements were false, and deliberately made them for the purpose of wrongfully damaging Plaintiff's reputation.

10

52. In accordance with the Foreign Agent Registration Act, 22 U.S.C. § 611 *et seq.*, unregistered lobbying on behalf of a foreign agent is a crime punishable by up to $10,000 fine and five years in prison.

53. Guo therefore knowingly, falsely accused Nunberg of a serious federal crime, which constitutes defamation per se.

54. Additionally, Guo's statement that "even their attorney-client relationship cannot be protected[,] *It is already a criminal matter*," is a direct false allegation of criminality as well as an allegation that Nunberg used his professional status as an attorney to cover up the alleged crime, which is a statement that would tend to injure Plaintiff in his profession.

55. Guo's statements were made on a public internet platform, available essentially around the globe, and which has been viewed tens of thousands of times over. Guo, as a virtual stranger to Nunberg making false claims to a worldwide, public audience, had no privilege or authorization to make such false claims.

56. Guo's statements have damaged, and continue to damage, Nunberg's personal and professional reputation.

57. Accordingly, Plaintiff seeks injunctive relief, in the form of an order directing Guo to remove the defamatory video and issue a correction/apology.

58. Plaintiff further seeks damages in an amount to be determined at trial, but in any event no less than $1,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

11

### AS AND FOR A SECOND CAUSE OF ACTION
(Defamation – Slander)

59. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

60. Under New York law, an action for defamation requires the following elements: (1) publication (2) to a third party (3) of a false statement about the plaintiff, (4) without privilege or authorization. "A defamatory statement is one which tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." *Knutt v Metro Intern., S.A.*, 91 AD3d 915, 916 [2d Dept 2012].

61. On January 19, 2019, Guo posted a public video on YouTube.com, on his personal YouTube account, "郭文贵", stating: "Why did Sam Nunberg go to a Jewish (club/synagogue) to spew big lies, saying he saved 60,000 Jews. This is totally ridiculous. If you ever have any common sense, how could he have saved 60,000 people? Jewish people would remember every person that gave them a loaf of bread."

62. Guo's statements are false, and he knew them to be false, as they appear to have been fabricated by him out of thin air.

63. At no point did Plaintiff ever claim to his synagogue, congregation, or any Jewish organization to have saved 60,000 Jews.

64. Guo's statement was made on a public internet platform, available essentially around the globe, and which has been viewed tens of thousands of times over. Guo, as a virtual stranger to Nunberg making false claims to a worldwide, public audience, had no privilege or authorization to make such false claims.

65. Guo's claim—that Nunberg, a descendent of Holocaust survivors and strong supporter of Israel, would "spew big lies" to his fellow Jews about having saved 60,000 Jews undoubtedly "tends to expose a person to hatred, contempt or aversion."

66. Guo's defamatory statements have damaged, and continue to damage, Nunberg's personal and professional reputation and business opportunities.

67. Accordingly, Plaintiff seeks injunctive relief, in the form of an order directing Guo to remove the defamatory video and issue a correction/apology.

68. Plaintiff further seeks damages in an amount to be determined at trial, but in any event no less than $1,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiffs demands judgment against Defendant as follows:

(i) On the first cause of action for Defamation – Slander Per Se, a judgment against Defendant Guo awarding Plaintiff damages in an amount to be determined at trial, but in any event no less than $1,000,000, plus prejudgment interest, costs, and attorney's fees, as well as injunctive relief, in the form of an order directing Guo to remove the defamatory video and issue a correction/apology;

(ii) On the second cause of action for Defamation – Slander, a judgment against Defendant Guo awarding Plaintiff damages in an amount to be determined at trial, but in any event no less than $1,000,000, plus prejudgment interest, costs, and attorney's fees, as well as injunctive relief, in the form of an order directing Guo to remove the defamatory video and issue a correction/apology; and

(iii) Any such further relief the court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, NY
February 19, 2020

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff*

By: /s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg, Esq.
Adrienne Levy, Esq.
Nesenoff & Miltenberg, LLP
363 Seventh Ave, 5th Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
alevy@nmllplaw.com